UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

KATHYLIA BORRERO and CHRISTINA RODRIGUEZ,

                                  Plaintiffs,

-against-

FITNESS & RECOVERY MEDICAL PRACTICE, P.C. and JEAN DOE, *Individually*, (the surname DOE being fictitious, as the true surname is presently unknown),

                                  Defendants.

------------------------------------------------------------------X

Case No.:

**COMPLAINT**

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Plaintiff KATHYLIA BORRERO and Plaintiff CHRISTINA RODRIGUEZ (together "Plaintiffs"), by their attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complain of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiffs complain pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), and the New York State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"). Plaintiffs seek damages to redress the injuries they have suffered as a result of being **retaliated against** and **terminated** by their employers solely for complaining of discrimination on the basis of their race (Hispanic).

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over Plaintiffs' claims brought under state law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), as the acts complained of occurred therein.

## PROCEDURAL PREREQUISITES

5. Plaintiffs each filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff BORRERO and Plaintiff RODRIGUEZ received Notices of Right to Sue from the EEOC, both dated November 8, 2018, with respect to the herein charges of discrimination. Copies of the Notices are annexed hereto.

7. This Action is being commenced within ninety (90) days of receipt of said Right to Sue Notices.

## PARTIES

8. Defendant FITNESS & RECOVERY MEDICAL PRACTICE, P.C. ("FITNESS & RECOVERY") is a domestic professional corporation operating in and existing under the laws of the State of New York. Defendant FITNESS & RECOVERY operates medical facilities located at 369 White Plains Road, Eastchester, New York 10709 (the "Office").

9. Plaintiff KATHYLIA BORRERO is a Hispanic-American.

10. Plaintiff CHRISTINA RODRIGUEZ is a Hispanic-American.

11. Upon information and belief, Defendant JEAN DOE's first name is "Jean"; Defendant JEAN DOE's last name is presently unknown to Plaintiffs and they therefore sue Defendant JEAN DOE by such fictitious name.

12. Defendant JEAN DOE ("JEAN") is an employee of Defendant FITNESS & RECOVERY with the title of Lead Medical Assistant.

13. Defendant JEAN was Plaintiffs' supervisor and had supervisory authority over Plaintiffs.

14. Defendant FITNESS & RECOVERY and Defendant JEAN are collectively referred to herein as "Defendants."

## MATERIAL FACTS

15. Defendant JEAN immediately greeted both Plaintiffs with hostility when they began working at the Office. Defendant JEAN would often ignore Plaintiffs. However, when she addressed them, she was typically very offensive. She regularly criticized Plaintiffs over small issues, yelled or even screamed at Plaintiffs, berated and belittled Plaintiffs, and used profane language as she routinely insulted them in front of coworkers and even patients.

16. Plaintiff BORRERO began working for Defendant FITNESS & RECOVERY as a medical receptionist on or about January 2, 2018, earning approximately $13 per hour and working approximately 40 hours per week.

17. Plaintiff RODRIGUEZ began working for Defendant FITNESS & RECOVERY as a medical receptionist on or about March 10, 2018, earning approximately $13 per hour and working approximately 40 hours per week.

18. Defendant JEAN treated non-Hispanic employees very differently from Hispanic employees. For example, Christine Brown, a Caucasian medical receptionist, was treated warmly by Defendant JEAN. In addition, non-Hispanic medical receptionists would often affectionately be called "doll" or "princess" by Defendant JEAN.

19. In or around late February 2018, Defendants hired Alex (last name unknown) as a medical receptionist.

20. Alex, who upon information and belief, is Caucasian, received similarly preferential treatment by Defendant JEAN. Defendant JEAN was always cordial and even friendly with Alex.

21. Plaintiff BORRERO helped train Alex as well as Ms. Brown for the medical receptionist position.

22. Plaintiff BORRERO frequently complained about the mistreatment she suffered at the hands of Defendant JEAN to her supervisor, Edward Nieves, who was the Office Manager. Mr. Nieves would tell Plaintiff "that's just the way [Defendant JEAN] is."

23. However, Plaintiff BORRERO soon concluded that things were more complicated and that Defendant JEAN was motivated by a discriminatory animus towards Hispanics.

24. As such, in or around March of 2018, Plaintiff BORRERO complained to Mr. Nieves that Defendant JEAN was discriminating against her and Plaintiff RODRIGUEZ.

25. In response to Plaintiff Borrero's complaint to Mr. Nieves in March 2018, he told her that she might want to "get [her] resume ready" because, "that's just how [Defendant JEAN] is."

26. Upon information and belief, Mr. Nieves did not address or elevate Plaintiff BORRERO's March 2018 complaint of discrimination to HR or anyone else.

27. Again in or around March 2018, Defendant JEAN cruelly berated Plaintiff BORRERO, reducing her to tears. Plaintiff BORRERO again called Mr. Nieves and asked him why Defendant JEAN was tormenting her and if it was because she and Plaintiff RODRIGUEZ are Hispanic. Mr. Nieves reiterated, "that's just the way she is."

28. On or around April 5, 2018, Alex was promoted to supervise the medical receptionists even though she had just joined the team approximately one month prior.

29. Plaintiff BORRERO was shocked that Defendants would offer Alex a promotional opportunity even though Plaintiff BORRERO had seniority over Alex.

30. Defendant JEAN's racist treatment of Plaintiffs was apparent to other employees of the Office. For example, on or about April 6, 2018, Ms. Brown even commented on the different manner in which Defendant JEAN treated Plaintiffs as compared to Ms. Brown and Alex.

31. On or about April 6, 2018, Defendant JEAN again berated Plaintiff BORRERO in front of a patient as well as Dr. Mack Sullivan, Defendant FITNESS AND RECOVERY's CEO. Specifically, that morning a patient entered the OFFICE to inquire whether their MRI had been reviewed. Plaintiff BORRERO asked Defendant JEAN, in Dr. Sullivan's presence, whether the patient's MRI was ready and she replied in an extremely rude manner that it was not ready. Plaintiff BORRERO then proceeded to schedule an appointment with the patient to return when the MRI was ready. Defendant JEAN then berated Plaintiff BORRERO in front of the patient, apparently upset that she was scheduling another appointment for the patient.

32. Defendant JEAN never explained to Plaintiff BORRERO that she should have instead asked the patient to wait while the MRI was reviewed. There was no reason for Defendant JEAN to act belittling and condescending to Plaintiff BORRERO and she was mortified at being treated in that manner in front of the patient.

33. Also, on or about April 6, 2018 at approximately 9am, Defendant JEAN screamed at Plaintiff RODRIGUEZ because she had written a telephone message on a sticky note rather than writing the message in a message book. Around 1pm that afternoon, Alex approached Plaintiff RODRIGUEZ and informed her that Defendant JEAN had complained to her about the sticky note issue from the morning.

34. Later the same day, Plaintiff RODRIGUEZ met with Ana (last name unknown), Defendant FITNESS AND RECOVERY's Billing Supervisor, regarding her interaction with Defendant JEAN. At this meeting, Plaintiff RODRIGUEZ informed Ana that she felt Defendant JEAN was racist, and was treating Plaintiffs worse than the non-Hispanic employees.

35. Plaintiff RODRIGUEZ also complained that Defendant JEAN's nasty and aggressive attitude towards herself and Plaintiff BORRERO made both Plaintiffs uncomfortable about asking Defendant JEAN questions.

36. In response to Plaintiff RODRIGUEZ's complaint, Ana sent Plaintiff RODRIGUEZ home. Ana asked Plaintiff RODRIGUEZ what happened earlier that day and she explained the rude manner in which Defendant JEAN shouted at her for writing a message on a sticky note rather than a message pad. Ana asked Plaintiff Rodriguez if she made any threatening comments. Plaintiff RODRIGUEZ replied that she had not said anything remotely threatening. Ana assured Plaintiff RODRIGUEZ that she was not being terminated and told her to go home for the day.

37. Around that time, Plaintiff BORRERO's shift was ending and Plaintiff RODRIGUEZ had been asked to leave the Office for the day and both Plaintiffs left together.

38. As they exited the Office, Plaintiffs called Mr. Nieves on a cell phone and both had a conversation with him on speaker phone.

39. During their call with Mr. Nieves, Plaintiff again complained about Defendant JEAN and asked if they were treated so badly because they are Hispanic. Mr. Nieves responded that it seems like Defendant JEAN is careful to only treat Plaintiffs badly when he is not around.

40. During their call with Mr. Nieves, Plaintiff RODRIGUEZ told him that she thought Defendant JEAN was racist and discriminating against Plaintiffs based on their race. Mr. Nieves agreed, even suggesting that Plaintiffs contact the EEOC.

41. During Plaintiffs joint call with Mr. Nieves, he also said he would try to have Plaintiff BORRERO transferred to the medical records department and to have Plaintiff RODRIGUEZ start working on weekends, in order to protect and keep them away from Defendant JEAN.

42. Then, on or about April 7, 2018, Joy (last name unknown), a Defendant FITNESS AND RECOVERY Human Resources employee, telephoned Plaintiff RODRIGUEZ and informed her that she was being terminated. Plaintiff RODRIGUEZ told Joy that she thought Defendant JEAN was racist and discriminating against Plaintiffs based on their race and that this was the reason she was being fired. Joy explained that the final decision to terminate Plaintiff RODRIGUEZ was Dr. Sullivan's.

43. Joy then telephoned Plaintiff BORRERO and told her that she was being fired because of the situation involving Defendant RODRIGUEZ. Plaintiff BORRERO protested that she was not involved in the incident at issue and that she was being fired because she was Hispanic.

44. Upon information and belief, Dr. Sullivan ordered the termination of both Plaintiffs.

45. Upon information and belief, Defendant JEAN manipulated and/or urged Dr. Sullivan to terminate Plaintiffs because they are Hispanic and because they complained of discrimination. She did so intending to have Dr. Sullivan terminate Plaintiffs. By intervening, Defendant JEAN proximately caused Dr. Sullivan to terminate Plaintiffs. Dr. Sullivan acted negligently when he allowed Defendant JEAN to cause him to terminate Plaintiffs even though he knew, or should have known, of Defendant JEAN's discriminatory animus towards Hispanics in general and Plaintiffs in particular.

46. Plaintiffs made more than one complaint of race discrimination to their supervisor, Mr. Nieves, and Defendants never acted to address their complaints.

47. Defendant FITNESS & RECOVERY knew or should have known of the discriminatory conduct and failed to take corrective measures within its control.

48. But for Plaintiffs' Hispanic race and the fact that Plaintiffs complained of discrimination, Defendants would not have terminated Plaintiffs.

49. Plaintiffs were repulsed, offended, disturbed, humiliated, and disgusted by their blatantly unlawful and retaliatory terminations.

50. Defendants retaliated against Plaintiffs because they objected to Defendant JEAN's discriminatory and unlawful conduct.

51. The above are just some of the ways Defendants regularly and continually harassed and retaliated against Plaintiffs.

52. Defendants treated Plaintiffs this way solely due to their race (Hispanic) and due to their complaint of discrimination on the basis of race.

53. Defendants acted intentionally and intended to harm Plaintiffs.

54. Defendants unlawfully harassed, retaliated against, humiliated, degraded, and belittled Plaintiffs. As a result, Plaintiffs suffer loss of rights, emotional distress, and loss of income.

55. Plaintiffs' performances were, upon information and belief, above average and satisfactory while working for Defendants.

56. Plaintiffs were qualified for their positions working for Defendants.

57. As a result of the acts and conduct complained of herein, Plaintiffs have suffered loss of employment, income, loss of a salary, loss of bonus, loss of benefits, other compensation which such employment entails, special damages, and great inconvenience.

58. Plaintiffs have also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

59. Defendants acted maliciously, willfully, outrageously, and with full knowledge of the law.

60. As such, Plaintiffs demand punitive damages as against all Defendants, jointly and severally.

**FIRST CAUSE OF ACTION FOR RETALIATION
UNDER TITLE VII
(Not Against Individual Defendants)**

61. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

62. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

63. Defendant FITNESS & RECOVERY violated the sections cited herein as set forth.

**SECOND CAUSE OF ACTION FOR RETALIATION
UNDER THE NEW YORK STATE EXECUTIVE LAW
(Against all Defendants)**

64. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

65. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

66. Defendants violated the section cited herein as set forth.

**THIRD CAUSE OF ACTION FOR DISCRIMINATION
UNDER NEW YORK STATE EXECUTIVE LAW
(Not Against Defendant FITNESS & RECOVERY)**

67. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

68. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

69. Defendant JEAN violated this statute as set forth.

## JURY DEMAND

70. Plaintiffs request a jury trial on all issues to be tried.

71. **WHEREFORE**, Plaintiffs respectfully request a judgment against Defendants:

   A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*, and the New York State Human Rights Law, New York State Executive Law § 296, *et seq.*, in that Defendants retaliated against Plaintiffs for complaining of discrimination on the basis of their race (Hispanic) and wrongfully terminating Plaintiffs;

   B. Awarding damages to Plaintiffs for all lost wages and benefits resulting from Defendants' unlawful discrimination and conduct and to otherwise make Plaintiffs whole for any losses suffered because of such unlawful employment practices;

   C. Awarding Plaintiffs compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiffs' reputation in an amount to be proven;

   D. Awarding Plaintiffs punitive damages;

   E. Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

   F. Awarding Plaintiffs such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
January 7, 2019

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By: _____
Steven Fingerhut
*Attorneys for Plaintiffs*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
sfingerhut@tpglaws.com